(73 App. Div. 538.)

### MILLER v. COUDERT et al.

(Supreme Court, Appellate Division, First Department. June 20, 1902.)

1. WILLS—MARRIAGE SETTLEMENT—CONSTRUCTION.

    A father settled a certain sum in trust on his daughter, on her marriage, in pursuance of an antenuptial agreement that the corpus thereof should revert to the father or his estate if she died childless. A subsequent will directed the division of his property equally between his children, except that the sum settled on the daughter should be deducted from her share as so much advanced, but that no reclamation should be made if her share in the estate was less than the sum so settled. The daughter died childless, after the death of the father, whereby, according to the terms of the trust, the funds would revert to his estate. *Held*, that the daughter's estate did not thereupon become entitled to an equal share in the father's estate with the other children without deducting the sum so settled on her.

2. SAME.

    The will created a legacy in favor of the daughter, by implication, of the corpus of the trust fund so settled on her; the provision in the will prohibiting the reclamation, on account of the fund, being in conflict with the provision in the settlement that it should revert to testator's estate.

    Patterson, J., dissenting. Van Brunt, P. J., dissenting in part.

Appeal from special term, New York county.

Action by George M. Miller, as trustee under a contract and under the will of Edmund H. Miller, deceased, against Frederic R. Coudert, Jr., as ancillary administrator with the will annexed of Francesco Ricci, deceased, and others, for the construction of a marriage settlement and of Miller's will. From the judgment of the special term of

the supreme court construing such instruments (72 N. Y. Supp. 441), all parties except the said Coudert appeal. Modified and affirmed.

Argued before VAN BRUNT, P. J., and McLAUGHLIN, PATTERSON, O'BRIEN, and LAUGHLIN, JJ.

Julian T. Davies for appellants.
Frederic R. Coudert, Jr., pro se.

LAUGHLIN, J. The action is brought for the construction of a marriage-settlement agreement and of the will of Edmund H. Miller, deceased.

Emma Miller, the daughter of the testator, Edmund H. Miller, contemplated marrying the decedent Francesco Ricci, and on the 15th day of October, 1877, an antenuptial agreement was made between her father, herself, and her husband, and her brother George M. Miller, as trustee, whereby, in the event of her marriage, the father acknowledged himself indebted to the trustee in the sum of $34,000, and agreed to pay the sum of $2,380 per annum for the separate use of his daughter during her life, securing the indebtedness and payments by a mortgage upon real estate. The agreement reserved to the father the right to substitute in place of the mortgage other securities of the value of $34,000, to be approved by the trustee, or that amount of money. The trustee was authorized to invest such securities or moneys, and was not to be held personally liable or responsible for any loss or depreciation arising therefrom. It was further provided that, if issue of the marriage should survive the death of the daughter, the principal of this fund should be divided among such issue as if their mother owned the property and died intestate in this state; but she was authorized to will the fund to her children in different proportions. It was, however, expressly provided that, if Emma should die without leaving issue of the marriage her surviving, "the said principal sum shall not be payable." Another provision of the agreement reads as follows:

"And in case of the death of the said Emma without leaving issue of the marriage, her surviving, all securities and money so received by him [meaning the trustee] shall revert and belong to the said Edmund H. Miller should he be living, or to his legal representatives should he be deceased."

The marriage took place as contemplated, and the trust was accepted. The father died on the 10th day of May, 1887. His daughter survived him, but died on the 2d day of March, 1897, leaving a will by which she constituted her husband her sole legatee. The husband was a resident of Rome, Italy, and subsequently died there, leaving a will; and ancillary letters of administration with the will annexed were issued here, to the respondent, on his estate. The testator made his last will and testament on the 17th day of August, 1883, nearly six years after the execution of the marriage settlement, and nearly four years before his death. After providing for an annuity of $500 per annum for his sister, he gave one half the residue of his estate to his executor, in trust, to receive the rents, income, and profits and apply the same to the use of his wife during life, and upon her death he directed that the principal be divided equally among his five children, or such of them as might be living and the issue of any who might have

died, with certain exceptions not material to the decision of the questions presented. The other half of said residue of his estate was given to his five children or such of them as might survive him, to be equally divided between them, "subject, however, to the provisions in respect to the shares of my daughters Emma and Gertrude Laura, hereinafter contained." The provisions thus referred are contained in the fourth clause of the will, which is as follows:

"I having, upon the marriage of my daughter Emma, settled upon her and her issue the sum of thirty-four thousand dollars, for which I have given to her husband, Francesco Ricci, my obligation, which is enforceable against my estate at Ringwood, New Jersey; and I having, upon the marriage of my daughter Gertrude Laura to Denis Charles MacGilly Cuddy, settled upon her and her issue the sum of six thousand pounds sterling, which I deem equivalent to thirty thousand dollars, which fund I have paid to trustees for her benefit, it is my will that the said sum of thirty-four thousand dollars be charged to my daughter Emma and that the said sum of thirty thousand dollars be charged to my daughter Gertrude Laura, on the division of my estate, as so much advanced to my said two daughters, respectively, on account of their respective shares. If their, or either of their, shares of the one-half of my estate directed to be divided on my decease, shall not be sufficient to discharge or equalize all of said advancements, then I direct that the deficiency, with interest from the time of my decease, be charged against their shares of the property directed to be divided on the death of their mother, or against the share of the one who shall be deficient. No reclamation is to be made against my said daughter Emma, or my said daughter Gertrude Laura, in case her share of my estate should prove insufficient to cover said advancement, but until the respective shares reach an amount sufficient to cover the same they are not to participate in my estate, but the whole is to be divided among my other children and their issue as before directed; and if the shares of my said two daughters exceed in value the sums so charged against them, respectively, they are to receive only the surplus necessary to make them equal with my other children and the issue of either of them who may have died."

The testator personally made the annual payments to his daughter, and did not change the security placed in the hands of the trustee; but after his death his executors paid the trustee the principal sum of $34,000, and obtained a release of the security. The trustee thereafter, during the life of the daughter, made the annual payments to her, but in the investment of the fund he incurred a heavy loss, for which, however, it is not claimed that he is responsible, but by which its value has been reduced to about $14,000. The fund now consists of an undivided $34/35$ interest in the premises known as No. 97 Crosby street in the city of New York and the sum of $407.65 cash on hand. In February, 1889, there was a judicial settlement of the accounts of the executors before the prerogative court of New Jersey, and in the decree the testator's daughter Emma was charged with an advancement of $34,000, as directed by the will.

The principal question presented by the appeal is whether that charge may now be canceled and she be given credit for the amount on the theory that, at the time the will was executed, the testator expected that she would die leaving issue and that the fund designated as an advancement would not revert to his estate. This is the view adopted by the learned trial justice, but we think it cannot be sustained. By language clear and definite the testator directed that on the division of the one-half of the residue of his estate, to be made as soon

after his death as practicable, his daughter Emma should be charged with $34,000, the amount of this fund, as an advancement. This, as has been seen, was done, and we find no warrant in the will for undoing it, or opening up that settlement. The trust agreement was not to take effect unless the marriage took place. Surely, there was no more probability at the time the will was made that the daughter would die leaving issue than at the time of the consummation of the marriage. At the latter time, the testator carefully provided that the fund should revert to him or his personal representatives in the event of the marriage taking place and his daughter dying without issue. Presumably, he had this agreement in mind at the time he made the will. If the daughter had left issue, her children would merely take what is left of this depleted fund. By the construction contended for, it is proposed to undo the judicial settlement, had in accordance with the will, and permit the testator's son-in-law, for whom he made no provision, to take more than the direct descendants of the testator could have taken. The daughter was only entitled to the life use of this fund. The corpus, therefore, could not be enjoyed by her personally, and, she having died without issue, it is clear from the marriage-settlement agreement, when read alone, that the testator contemplated that it should revert to him or his estate.

The next question arising is whether the trust fund in the hands of the trustee under the marriage-settlement agreement reverts to the testator's estate or whether, construing the marriage-settlement agreement and the will together, it should be deemed a legacy to the testator's daughter Emma, and thus go to the administrator of her deceased husband. A legacy may be created by implication as well as by an express gift. In Re Vowers' Will, 113 N. Y. 569, 21 N. E. 690, the court, in holding that a legacy may be given by implication, says:

"Undoubtedly, in every such case we must be quite sure of the testator's intention, and not substitute for it some notion of our own; but when his words leave no doubt about his intention, and can have no other reasonable interpretation, we are justified in upholding a legacy by implication where no gift in express terms has been made."

We deem this rule applicable to the will now under consideration. There is much to indicate that the will was intended to operate as a modification of that clause of the marriage-settlement agreement which provided for a reversion in case of the death of the daughter without issue. In the first place, there is no express disposition of any such reversion made in the will, and there is nothing to indicate that the testator expected his estate to be augmented by anything occurring subsequent to his death. He expressly declares that, on the division of one-half of his residuary estate following his death, this amount of $34,000 shall be charged to his daughter "as so much advanced." He refers to the marriage settlement, and manifestly had it in mind. The will further provides that, if the share of the daughter in that part of his estate to be divided after his death should not equal the amount of the advancement, the deficiency, with interest from the time of his death, be charged against her share on the division of that part of the estate of which his wife was given the life use. It is significant that he expressly provided that no reclamation was to be made against his

daughters to whom these alleged advances were made. We think that the provision in the marriage-settlement agreement that the funds in the hands of the trustee should revert in the event of the death of the daughter without issue is in conflict with this provision of the will, which prohibits a reclamation against his daughter on account of this fund. We therefore agree with the learned trial justice that when the testator made this will he contemplated that the funds held in trust for the use of his daughters during life had gone from his estate forever, and we are of opinion that he so intended.

The facts are not in dispute, and manifestly they could not be changed on a new trial. The judgment should, therefore, be modified so as to direct the trustee to pay the balance of this fund to the respondent, and the provisions with reference to the distribution of the residue of the estate should be modified accordingly, and as modified affirmed, with costs to all parties payable out of the fund.

O'BRIEN and McLAUGHLIN, JJ., concur. PATTERSON, J., dissents.

VAN BRUNT, P. J. I concur in that part of the opinion of Mr. Justice LAUGHLIN which holds that the $34,000 should be charged as therein stated, but I dissent from the conclusion arrived at. I am of the opinion that the fund reverted to the testator's estate, and must be distributed as part of his residuary estate. To hold otherwise is to make a new contract between the parties to the marriage settlement without the consent of either.